# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURORA LOAN SERVICES, LLC; LEHMAN BROTHERS BANK, FSB n/k/a AURORA BANK FSB,<br><br>    Plaintiff,<br>vs.<br><br><br><br>DENNIS RANDALL GRAY,<br><br>    Defendant. | CASE NO. 10CV1555 JLS (BLM)<br><br>**ORDER (1) GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; (2) DECLARING FINANCING STATEMENTS INVALID; (3) PERMANENTLY ENJOINING DEFENDANT FROM FILING ADDITIONAL FINANCING STATEMENTS; AND (4) AWARDING STATUTORY DAMAGES**<br><br>(ECF No. 37) |

     Presently before the Court is Plaintiffs Aurora Loan Services, LLC ("Aurora") and Lehman Brothers Bank FSB n/k/a Aurora Bank FSB's ("Aurora Bank," and collectively, "Plaintiffs") Motion for Summary Judgment. (MSJ, ECF No. 37). The motion hearing set for May 31, 2012 was vacated and the matter taken under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the parties' arguments and the law, the Court **GRANTS** Plaintiffs' motion.

## BACKGROUND

     In 1985, Defendant Dennis Randall Gray ("Gray," or "Defendant") moved into a home at 954 Surrey Drive in Bonita, California. (MSJ at 3, ECF No. 37). His fiancee, Maria Metcalf, obtained a loan to finance the purchase of the home and in 2007 refinanced the debt with another

loan. (*Id.*) Aurora became the loan servicer for the loan and, shortly afterwards, commenced foreclosure proceedings against the property. (*Id.*)

After the foreclosure sale, Gray began sending documents to Plaintiffs, as well as to other parties that Gray believed to be involved in the foreclosure. (Compl., ¶ 6, ECF No. 1). These fraudulent documents purported to show that Plaintiffs owed Gray a debt of $3,464,000 for "labor and capital" that he allegedly contributed to the property and that Gray was therefore entitled to a lien on Plaintiffs' assets. (*See* Compl., Ex. 5, "Request for Validation and Verification of Alleged Debt," ECF No. 1; Compl., Ex. 6, "Notice of Fault and Opportunity to Cure," ECF No. 1; Compl., Ex. 7, "Due Presentment Under Notary Seal Settlement." ECF No.1; Compl., Ex. 9, "Notice of Default in Dishonor." ECF No. 1; Compl., Ex. 10, "Claim of Lien." ECF No.1; Compl., Ex. 11, Document Titled "For the Certificate of Dishonor." ECF No. 1; Compl., Ex. 12, "Notice of Default and Entry for Default Judgment." ECF No. 1; Compl., Ex. 13, "Declaration by Affidavit of Notary Public," ECF No. 1; Compl., Ex. 14, Document Titled "For the Notice of Substitution of the Trustee," ECF No. 1; Compl., Ex. 15, Document Titled "For the Substitution of the Trustee," ECF No. 1). Plaintiffs did not respond to Gray's harassing letters. (Compl., ¶ 6, ECF No. 1). They do not owe Gray any debt and have never signed a security agreement granting Gray an interest in their property. (Declaration of Kristen Trompisz in Support of MSJ ("Trompisz Decl."), ¶¶ 6–7, ECF No. 37). Moreover, Plaintiffs have never authenticated any document authorizing Gray to file a financing statement. (*Id.*)

On April 6, 2008, Gray filed a UCC financing statement with the California Secretary of State ("Secretary") as document number 16454380002, and under filing number 08-7153038742, listing his own name as both the debtor and the secured party and indicating "flotsam/jetsam" as the collateral.[1] (Compl., ¶ 7, ECF No. 1) On June 25, 2008, Gray filed an unauthorized UCC financing statement amendment as document number 17471600002, and under filing number 08-71629790, adding Aurora and Aurora Bank as additional debtors to the April 6, 2008 financing

---

[1] The Court notes that Gray's UCC filings are "facially absurd," *United States v. Gordon*, No. CV205-158, 2005 WL 2237640 (S.D. Ga. Aug. 25, 2005), and include several superfluous attachments, such as copies of his birth certificate and Social Security card. (*See* Compl., Ex. 4, ECF No. 1).

statement. (*Id.* at ¶ 8) On July 2, 2008, Gray recorded copies of both the April 6, 2008 initial financing statement and June 25, 2008 financing statement amendment with the San Diego County Recorder ("Recorder") as document number 2008-0356137. (*Id.* at ¶ 9)

On August 4, 2008, Gray filed another unauthorized UCC financing statement with the Secretary's office as document number 17939220002, and under filing number 08-7167732001. (*Id.* at ¶ 10). The document again listed Gray as both the debtor and the secured party and also included an 11-page form attachment with a description of the collateral covering all of the debtor's assets. (Compl., Ex. 4, ECF No. 1). Plaintiffs were listed as additional debtors and Gray attached several letters that he sent to Plaintiffs, which he cited as evidence of the alleged $3,464,000 debt. (Compl., ¶ 11, ECF No. 1).

On April 27, 2009, Gray recorded a copy of a UCC financing statement amendment with the Recorder's office as document number 2009-0217091. (Compl., ¶ 12, ECF No. 1). Gray again attached several letters and documents that he sent to Plaintiffs regarding the alleged debt. (*Id.*)

On November 16, 2009, Plaintiffs wrote to Gray demanding that he withdraw the unauthorized UCC filings. (Compl., ¶ 14, ECF No. 1). To date, Gray has not withdrawn any of the financing statements. (*Id.* at ¶ 18). He continues to believe that Plaintiffs are indebted to him in the amount of $3,464,000 and that he holds a valid and "duly perfected" lien on their assets. (Opp'n to MSJ, ECF No. 38).

On July 27, 2010, Plaintiffs filed this lawsuit, in which they assert two causes of action against Gray: (1) unauthorized filing of UCC financing statements under California Commercial Code § 9509; and (2) "improper recording" of documents with the Recorder's office. (Compl., ¶¶ 19–30, ECF No. 1). Plaintiffs request relief in the form of: (1) a declaratory judgment that Gray's UCC filings with the Secretary's office and the Recorder's office are invalid; (2) an order requiring the Secretary to withdraw the unauthorized financing statements and requiring the Recorder's office to expunge the improper filings from the public record; (3) a permanent injunction prohibiting Gray from filing any additional financing statements covering Plaintiffs' assets; and (4) statutory damages under Commercial Code § 9625 for each unauthorized UCC filing. (MSJ at 6–8, ECF No. 37).

**JURISDICTION**

A federal court has jurisdiction over an underlying dispute if the suit is between citizens of different states and the amount in controversy exceeds $ 75,000 exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). "[T]he amount in controversy is determined from the face of the pleadings." *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (internal quotations and citations omitted.). "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* This "legal certainty" standard indicates that the Court has subject matter jurisdiction unless, "upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938). Moreover, where plaintiffs seek declaratory or injunctive relief, rather than monetary damages, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (internal quotations and citations omitted).

Here, the amount in controversy is equal to the statutory damages claimed plus the value of the declaratory and injunctive relief, which must be understood as the value to Plaintiffs of rectifying the appearance that the assets covered by Gray's financing statements have been pledged as collateral.[2] Gray's unauthorized filings seemingly give notice of a security interest covering all of Plaintiffs' assets, (*see* Compl., Ex. 4, ECF No. 1), and thus could have a significant impact on Plaintiffs' ability to obtain credit or to use or sell property.[3] For this reason, the Court concludes that, although Plaintiffs are entitled to at most $2,000 in statutory damages under § 9625, diversity jurisdiction is proper in this matter as the value of the declaratory and injunctive

---

[2] In their Response to the Court's Order to Show Cause, Plaintiffs argue that the amount in controversy is equal to $3,464,000, the value of the debt that Gray claims he is owed. (Response to OSC at , ECF No. 42). This argument seems flawed, however, as a financing statement typically does no more than identify the debtor, the secured party, and the collateral, and usually does not specify the amount of the underlying debt. *See* Commercial Code § 9502(a). Because the amount in controversy is equal to the value of the object of the litigation, it should be determined by establishing the value to Plaintiffs of removing the appearance that their assets have been encumbered.

[3] The descriptions of the collateral in Gray's financing statements are nearly unintelligible. Nonetheless, the Court allows for the possibility that Gray's fraudulent filings may have serious consequences for Plaintiffs despite their evident absurdity.

relief requested may exceed $73,000.[4]

## STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." *Id.* When the Court weighs the evidence to be presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating to the Court that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*. at 322–23.

Once the moving party satisfies this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, the nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. The nonmoving party must identify those facts of record that would contradict the facts identified by the movant.

///

///

---

[4] It is undisputed here that the parties are citizens of different states.

## ANALYSIS

**1. Whether Gray's Filings Should be Declared Invalid**

California Commercial Code § 9509 specifies who is eligible to file a UCC financing statement and provides, in relevant part, that a person may file an initial UCC financing statement only if "[t]he debtor authorizes the filing in an authenticated record" or if the debtor "[b]y authenticating or becoming bound as debtor by a security agreement . . . authorizes the filing . . . ."

Here, Plaintiffs have presented uncontroverted evidence showing that they never authenticated any document authorizing Gray to file a UCC financing statement nor did they enter into any loan or security agreement with Gray. (Trompisz Decl., ¶¶ 6–7, ECF No. 37). Gray's opposition and accompanying exhibits, even when liberally construed, confirm this account. Gray argues only that Plaintiffs became indebted to him when they failed to respond to his many letters and that this somehow constituted a grant of authority for Gray to obtain and perfect a lien in Plaintiffs' assets. (Opp'n to MSJ at 3–4, ECF No. 38; *see also* Declaration of Andrew H. Hall in Support of MSJ, Ex. 1, Deposition of Dennis Gray at 18–19, ECF No. 37).

These arguments are frivolous. As Gray's filings are clearly without merit and in violation of California law, Plaintiffs are entitled to a declaration that the UCC financing statements filed against them are null, void, and without legal effect. *See United States v. Biggs*, No. CIV-S-04-1263, 2007 WL 3313022 at *11 (E.D. Ca. Nov. 6, 2007); *Semmelman v. Mellor*, No. 05-644, 2006 WL 90094 at *3–4 (D. Minn. Jan. 13, 2006).

**2. Whether the Court Should Issue an Order Expunging Gray's Fraudulent Filings from the Public Record**

Plaintiffs also request that the Court issue an order expunging the fraudulent filings from the public record. Such an order would be inappropriate at this time because neither the Secretary nor the Recorder's office is a party to this action. *See Semmelman,* 2006 WL 90094 at *4–5. Thus, the Court declines to provide Plaintiffs with this form of relief.

**3. Whether Gray Should be Permanently Enjoined from Filing Additional Financing Statements**

Plaintiffs also seek an order permanently enjoining Gray from filing additional financing

1 statements. To obtain permanent injunctive relief, the Plaintiffs must show (1) that they have
2 suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are
3 inadequate to compensate for that injury; (3) that, considering the balance of hardships between
4 Plaintiffs and Defendant, a remedy in equity is warranted; and (4) that the public interest would
5 not be disserved by a permanent injunction. *eBay Inc. v. MercExchange L.L.C.*, 547 U.S. 388, 391
6 (2006); *Northern Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007).

7 Plaintiffs argue that they will suffer irreparable harm absent an injunction because Gray
8 has a history of filing frivolous financing statements and refuses to withdraw them even when
9 confronted with "overwhelming evidence of their legal insufficiency." (MSJ at 8, ECF No. 37).
10 Plaintiffs argue that there is no adequate remedy at law once fraudulent filings are on the record;
11 they would need to request further equitable relief from the Court. (*Id.*) Plaintiffs further argue
12 that there will be no harm to Gray if an injunction is granted because Gray has no legitimate need
13 to file any financing statements against Plaintiffs. (*Id.*) Finally, Plaintiffs maintain that the public
14 interest would be served by preventing Gray from "further muddling public records with false
15 documents." (*Id.*) As Plaintiffs have clearly made the required showing, they are entitled to an
16 permanent injunction prohibiting Gray from filing additional financing statements against
17 Plaintiffs absent prior authorization from this Court.

18 **4. Whether Statutory Damages Should Be Assessed under § 9625**

19 A person who files an unauthorized record under Commercial Code § 9509 is also liable
20 for statutory damages under § 9625(e). Section 9625 provides, in relevant part, that:

21 "(e) [i]n addition to any [actual] damages recoverable . . . the debtor, consumer obligor, or
22 person named as a debtor in a filed record, as applicable, may recover five hundred dollars ($500)
23 in each case from any of the following persons:

24 (3) A person that files a record that the person is not entitled to file under subdivision (a) of
25 Section 9509."

26 Here, Aurora and Aurora Bank request statutory damages of $500 each for two
27 unauthorized UCC filings: (1) the UCC financing statement amendment filed as document number
28 17471600002 and under filing number 08-71629790; and (2) the UCC financing statement filed as

1  document number 17939220002 and under filing number 08-7167732001.  As Plaintiffs have

2  presented undisputed evidence that both of these filings were unauthorized, Plaintiffs are entitled

3  to statutory damages under § 9625 totaling $2,000—$500 for each plaintiff for each unauthorized

4  UCC filing.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment and **HEREBY ORDERS** that:

(1) the UCC financing statement amendment filed with the California Secretary of State as document number 1741600002, and under filing number 08-71629790, and the UCC initial financing statement filed with the California Secretary of State as document number 17939220002, and under filing number 08-7167732001, are **NULL**, **VOID**, and **WITHOUT LEGAL EFFECT**;

(2) the UCC financing statement amendments recorded in the San Diego County Recorder's Office as document numbers 2008-0356137 and 2009-0217091 are **NULL**, **VOID**, and **WITHOUT LEGAL EFFECT**;

(3) Gray is **PERMANENTLY ENJOINED** from filing with the California Secretary of State or recording in the public records of San Diego County any further UCC financing statements, financing statement amendments, or any other fraudulent documents concerning (a) Aurora; (b) Aurora Bank; (c) any of Aurora or Aurora Bank's employees or agents; or (d) Aurora's counsel, Akerman Senterfitt LLP, or any of its shareholders or employees, absent a prior order from this Court; and

(4) Gray **SHALL PAY** $1,000 to Aurora and $1,000 to Aurora Bank for violations of California Commercial Code § 9509.

**IT IS SO ORDERED**.

DATED:  December 4, 2012

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge